UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARK MENARD and )
CAROL E. MENARD, )
      Plaintiffs )
)
v. ) C.A. No. 11-cv-30161-MAP
)
CSX TRANSPORTATION, INC., )
      Defendant )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFFS' MOTION TO AMEND COMPLAINT
(Dkt. Nos. 11 and 19)

January 3, 2012

PONSOR, U.S.D.J.

I. INTRODUCTION

This case arises from injuries Plaintiff Mark Menard suffered on July 30, 2008, while walking across a rail yard owned and managed by Defendant CSX Transportation, Inc. Count I alleges that Defendant was reckless and negligent when it permitted dangerous train operations to continue while knowing that Mr. Menard was in the rail yard. Count II asserts loss of consortium on behalf of Plaintiff Carol E. Menard, Mr. Menard's mother. Defendant has moved to dismiss the Complaint. (Dkt. No. 11.) Plaintiffs opposed

the motion (Dkt. No. 16), and subsequently filed a motion to amend the Complaint to include more detailed factual allegations (Dkt. No. 19). The proposed amended Complaint contains three counts, which are substantially identical to the counts in the original Complaint: willful and wanton conduct, negligence, and loss of consortium. Defendant opposes Plaintiffs' motion to amend. (Dkt. No. 20.) For the reasons stated below, the court will allow Defendant's motion to dismiss and deny Plaintiffs' motion to amend.

## II. BACKGROUND

Plaintiffs allege the following facts in the original Complaint, which the court assumes to be true on a motion to dismiss. See Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010) ("We accept as true all well-pleaded facts set out in the complaint and draw all reasonable inferences from them in favor of the pleader.").

On July 30, 2008, Mr. Menard entered a rail yard owned and operated by Defendant in West Springfield, Massachusetts. While in the rail yard, Mr. Menard's right foot was crushed by a railroad switch. Mr. Menard tried to escape, fell under a train, and sustained further injuries.

His left leg was severed and his left arm was "de-gloved." As a result, Mr. Menard had both legs amputated and his left arm was severely deformed.

Plaintiffs allege additional facts in the proposed amended Complaint. For years before the date of the accident, Mr. Menard had crossed the rail yard, with the knowledge of CSX employees, to reach his home. Others had also crossed the rail yard with the employees' tacit approval. On the day of the accident, Mr. Menard walked past at least three CSX employees who saw him enter the rail yard. The employees did not warn him not to enter the rail yard and did not take any actions to prevent him from suffering injuries. The proposed amended Complaint alleges that any signs posted outside of the rail yard were insufficient to warn pedestrians of the dangers of crossing through the rail yard. Inside the rail yard, Mr. Menard made eye contact with a train engineer and a conductor, who also did not warn him of the dangers of crossing the rail yard. The conductor waived his right arm, as if directing Mr. Menard to move to his right.

As Mr. Menard crossed the tracks inside the rail yard,

he felt his right foot being crushed by a rail switch. The proposed amended Complaint alleges that CSX employees knew Mr. Menard had been injured by the switch and had sufficient time to prevent further injuries. Mr. Menard freed his crushed foot from the rail switch and, in a state of shock, staggered approximately thirty feet through the rail yard attempting to escape. He was then struck by a train and knocked under its wheels. Police investigating the incident took statements from CSX employees who admitted that they saw Mr. Menard enter the rail yard, but did not alert other CSX personnel of Mr. Menard's presence and did not take other action to prevent Mr. Menard's injuries.

### III. DISCUSSION

A. Motion to Dismiss.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While the complaint need not

provide "detailed factual allegations" to meet this burden, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

It is undisputed that, on the day of the accident, Mr. Menard was a trespasser in the rail yard. Generally, the only duty railroads owe to trespassers is to refrain from willful, wanton, or reckless conduct. See McConville v. Mass. Bay Transp. Auth., 852 F. Supp. 1, 2 (D. Mass. 1994). The only exception relevant to this case applies when the railroad fails to take reasonable steps to protect a trespasser who is in a position of peril inside the property and whose presence is known to the railroad. See Pridgen v. Boston Housing Auth., 364 Mass. 696, 711, 308 N.E.2d 467, 477 (1974).

The parties agree that the willful and wanton standard

5

applies to Mr. Menard's claims regarding the injury to his right foot, because Plaintiffs have not alleged that Mr. Menard was trapped in the rail yard before suffering this injury. Plaintiffs argue that the negligence standard should apply to the claims regarding all further injuries because, even though the Complaint does not directly allege that Mr. Menard was in a position of peril after the injury to his right foot, peril can be reasonably inferred from the allegations that Mr. Menard's foot was severed and that he "tried to escape" (Dkt. No. 1, Compl. ¶ 9). Defendants disagree, but contend that, even under the lower negligence standard, the facts as alleged in the Complaint are insufficient to survive a motion to dismiss. The court agrees that Plaintiffs have failed to state a claim under either the willful and wanton or negligence standards.

1. <u>Willful, Wanton, or Reckless Conduct</u>.

For conduct to be willful, wanton, or reckless, Defendant must "intentionally persist[] in conduct involving a high degree of probability that substantial harm would result to another." <u>Wright v. Conway</u>, No. Civ. A. 01-30076-MAP, 2003 WL 22391232, at *3 (D. Mass. Oct. 17, 2003)

6

(internal citation omitted). Courts have found that excessive speed and inattention do not amount to willful, wanton, or reckless conduct, even if railroad employees know that individuals often cross the tracks at a particular point. See, e.g., Montes v. Mass. Bay Transp. Auth., 446 Mass. 181, 186-87, 843 N.E.2d 611, 616 (2006); Gage v. City of Westfield, 26 Mass. App. Ct. 681, 691, 532 N.E.2d 62, 68 (1988). Only allegations of actual knowledge that trespassers are on the tracks with enough time to avoid an accident may be sufficient for willful, wanton, or reckless conduct. Gage, 532 N.E.2d at 68-69.

Plaintiffs' allegations in the original Complaint are clearly insufficient to meet this standard, both with regard to the initial injury to his foot and with regard to the even more serious injuries suffered subsequently when Plaintiff fell under the train. Plaintiffs provide only conclusory allegations that

> defendant's agents acted with reckless disregard of the plaintiff's safety and intentionally failed to act while knowing or having reason to know of rail operations and circumstances which created an unreasonable risk of physical harm to the plaintiff.

(Dkt. No. 1, Ex. 1, Compl. ¶ 6.)  Plaintiffs fail to allege in their original Complaint who, if anyone, knew of Mr. Menard's presence in the yard or that they had enough time to act after becoming aware of Mr. Menard's presence.  Indeed, Plaintiffs even fail to allege that Mr. Menard was on the tracks at all.  It is unclear from the Complaint where Mr. Menard was when he was injured by the railroad switch, where he moved after being injured, when, if ever, he stepped on the tracks, or where he was when he was struck by a train.  Plaintiffs also fail to allege how "defendant failed to exercise reasonable care for the plaintiff's safety" and what constituted Defendant's "continuous dangerous operations."  (Id. ¶¶ 8-9.)

There is nothing in the Complaint to suggest that Defendant did anything other than conduct normal railway operations.  Cf. Wright, 2003 WL 22391232, at *3 ("The record in this case . . . is grossly inadequate to demonstrate that Conrail's conduct was willful, wanton, or reckless.  All Conrail did was conduct a train along a track in its normal course of business.").  Such conclusory allegations are insufficient to meet the standard of

willful, wanton, or reckless conduct.

    2. <u>Negligence</u>.

When a trespasser is helplessly trapped on a landowner's property, and the landowner knows of the trapped trespasser, the landowner owes "a duty to exercise reasonable care to prevent injury or further injury, including, if necessary, the duty to take reasonable affirmative action." <u>Pridgen</u>, 308 N.E.2d at 477.

Preliminarily, it is questionable, based on the allegations offered in the original Complaint, whether Plaintiff might be viewed as "trapped" in the circumstances described. The Complaint makes it clear that Plaintiff had voluntarily trespassed on the railroad property and that he had been hurt. It is far from clear whether this alone is enough to lower the standard of care to mere negligence.[1] As noted, if Plaintiff was not "trapped," his claims for all

---

[1] As will be seen, the proposed amended Complaint does not assist Plaintiff on this issue. It adds the facts that Plaintiff actually managed to free himself from the switch that initially injured him and travel some distance before falling under the train and suffering further injuries. These additional allegations suggest that, in some sense, Plaintiff was not trapped.

his injuries must be assessed under the stricter wanton and willful standard.  The court need not resolve this dispute, however, because even under the more generous negligence standard the Complaint fails to state a claim.

Plaintiffs allege that Defendant "allowed the dangerous conditions and rail yard operations to continue" even after it became clear that Mr. Menard was trapped in the rail yard and, by doing so, "failed to exercise reasonable care for the plaintiff's safety."  (Dkt. No. 1, Ex. 1, Compl. ¶¶ 7-9.)  As elucidated during the hearing on this motion, Plaintiffs' theory appears to be that, once Defendant became aware of the initial injury to Mr. Menard's right foot, it had a duty to stop all train operations in Mr. Menard's vicinity to prevent further injuries.  Failing to do so, according to Plaintiffs, amounted to negligence.

Plaintiffs have not alleged sufficient facts to support this theory of negligence.  Once again, Plaintiffs provide nothing more than conclusory allegations that "it was clear that . . . [Mr. Menard] was trapped in the rail yard" and that "agents of the defendant were aware of the plaintiff's presence in the rail yard."  (Id. ¶¶ 8-9.)  Although there

may be sufficient allegations to support the conclusion that employees of Defendant were generally aware, at some point, that Plaintiff was in the rail yard, no specific facts support the conclusion that any employee was aware of Plaintiff's injury or when they acquired this knowledge. The Complaint offers no estimate of how much time passed between the time Plaintiff became trapped and when he fell under a train. More importantly, there is no allegation that the train engineer saw Mr. Menard before the second accident when he fell under the train, or that he could have stopped the train in time to prevent an accident. There is simply nothing in the Complaint to support the inference that Defendant had sufficient time after Mr. Menard's initial injury with the switch, when he allegedly became "trapped," to stop rail operations -- or do anything else -- to prevent further injuries.

Plaintiffs offer no other allegations that could support a finding of negligence. Plaintiffs do not allege, for example that the train was speeding, or that the railway was in any other way being improperly operated. Count I of the Complaint, thus, must be dismissed.

3. Loss of Consortium.

Because Mr. Menard has failed to state a claim for willful, wanton, or reckless conduct or for negligence, Mrs. Menard's claim for loss of consortium fails as a matter of law. See Sena v. Commonwealth, 417 Mass. 250, 264, 629 N.E.2d 986, 994 (1994) ("As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury." (internal citation omitted)).

Mrs. Menard's loss of consortium claim, as set forth in the initial Complaint, must be dismissed for another reason as well. Under Massachusetts law, a parent may recover for the loss of an adult child's consortium only if the adult child "is dependent on his parents for support." Mass. Gen. Laws. ch. 231, § 85X; Monahan v. Town of Methuen, 408 Mass. 381, 390, 558 N.E.2d 951, 957 (1990) ("[I]n order for an adult child to be considered 'dependent on his parents for support,' that child must be, at the very least, financially dependent on his parents, either prior to or after the accident, or both." (emphasis in original)). The Complaint fails to allege that Mr. Menard was dependent on Mrs. Menard

either before or after the accident and, thus, the loss of consortium claim must be dismissed.

Defendant argues that the Complaint attempts to state claims for intentional and negligent infliction of emotional distress as well as loss of consortium.  To the extent that it does so, these claims will also be dismissed.  The Complaint fails to allege that Mrs. Menard was present at the scene of the accident, as is required for intentional infliction of emotional distress.  Anthony H. v. John G., 415 Mass. 196, 199, 612 N.E.2d 663, 665 (1993).  The Complaint also fails to allege that Mrs. Menard suffered any physical harm, as is required for negligent infliction of emotional distress.  Sullivan v. Boston Gas Co., 414 Mass. 129, 132, 605 N.E.2d 805, 807 (1993).

B. Motion to Amend.

Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), unless the amendment is futile, rewards undue delay, or causes grave injustice to Defendant.  Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).  An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss.  Id.

In this case, Plaintiffs' proposed amended Complaint suffers from the same flaws as the original Complaint and granting Plaintiffs leave to amend would be futile.

   1. <u>Willful, Wanton, or Reckless Conduct</u>.

While, unlike the original Complaint, the proposed amended Complaint does allege that certain CSX employees -- three employees Mr. Menard passed on his way into the rail yard and a conductor and engineer inside the rail yard -- were aware of Mr. Menard's presence in the rail yard, it still fails to allege that these or other employees engaged in willful, wanton, or reckless conduct. Plaintiffs make a conclusory allegation that Defendant "intentionally persisted in conduct involving a high degree of probability that substantial harm would result to Mr. Menard including highly dangerous rail operations." (Dkt. No. 19, Ex. 1, Proposed Amended Compl. ¶ 31.) However, the complaint fails to specify what this conduct consisted of or how the rail operations were dangerous.

Plaintiffs' allegations that the employees did not take any actions to prevent Mr. Menard's injuries are also insufficient. It is unclear what kind of actions the

employees could have taken. As in the original Complaint, there are no allegations that the train was speeding, that employees were inattentive, or that they were in any way improperly operating the railway.

The only concrete allegations Plaintiffs make are that Defendant's employees failed to warn Mr. Menard of the dangers of entering the rail yard. (Id. ¶¶ 9, 10, 14.) However, Defendant's failure to warn cannot constitute willful, wanton, or reckless conduct. See Washburn v. Union Freight R. Co., 247 Mass. 414, 416, 142 N.E. 79, 80 (1924) ("The failure of the defendant . . . to warn travelers of the proposed movement of the cars is insufficient to warrant a finding of willful and wanton conduct . . . ."). For the same reason, the employees' failure to alert other CSX personnel of Mr. Menard's presence is also insufficient.

Plaintiffs argue that this case is analogous to Gage, where the Massachusetts Appeals Court found that, under some circumstances, failing to warn a train engineer of the presence of people on the tracks may amount to recklessness. 532 N.E.2d at 68 n.6. In Gage, however, the plaintiffs presented evidence that the engineer of the westbound train

15

was in a position to see two teenagers standing on the eastbound tracks and, furthermore, knew that an eastbound train was currently approaching on those tracks. Id. There was further evidence that the engineers of the two trains were in radio contact from the time the eastbound train was three quarters of a mile away and that it was the railroad's procedure for engineers who see people on the tracks to notify engineers of oncoming trains. Id. at 67. In light of this evidence, the appeals court determined that a jury could find that the westbound train engineer "knew that the two youths were in serious danger of being killed and had the opportunity to . . . warn the eastbound train's engineer in time for him to avoid the accident . . . ." Id. at 68 n.6.

In this case, on the other hand, Plaintiffs attempt to argue that, as soon as Mr. Menard entered the rail yard, even before he stepped on the train tracks or was in any immediate danger of injury, Defendant's employees had a duty to instruct him to leave, alert other personnel of his presence, or even stop rail operations. These facts are substantially different from Gage -- where one train

16

engineer saw persons standing on train tracks as another train was imminently approaching -- and cannot constitute willful, wanton, or reckless conduct.

   2. <u>Negligence</u>.

   Plaintiffs allege in the proposed amended Complaint that Defendant

> negligently failed to adequately warn Mr. Menard
> of the dangers of entering into the Railroad Yard,
> negligently failed to instruct Mr. Menard to leave
> the Railroad Yard once he had entered into it . .
> . , and negligently failed to enforce any posted
> restrictions on pedestrians entering into the
> Railroad Yard . . . .

(Dkt. No. 19, Ex. 1, Proposed Amended Compl. ¶ 41.) However, because Mr. Menard was a trespasser, Defendant is only liable for negligence after Mr. Menard became helplessly trapped in the rail yard.  Thus, Defendant is not liable for its potentially negligent failure to warn Mr. Menard, to instruct him to leave, and to enforce posted restrictions before Mr. Menard became helplessly trapped.

   Plaintiffs' only allegations of negligence after Mr. Menard alleges he became helplessly trapped are that Defendant "knew or should have known . . . that Mr. Menard was trapped within the Railroad Yard . . . , yet CSX

17

negligently persisted in highly dangerous rail operations in disregard for Mr. Menard's safety." (Id. ¶ 39.) However, as noted above, there are no facts to support the allegations that Defendant knew Mr. Menard was trapped, that the rail operations were "highly dangerous," or that Defendant had sufficient time to stop rail operations.

> Plaintiffs' vague allegation that
>
> [u]pon information and belief, employees and/or agents of CSX knew that Mr. Menard had been injured by the rail switch and had sufficient time to take action to prevent further injury to him

is insufficient. (Id. ¶ 19.) Plaintiffs do not allege that Mr. Menard saw any employees in the vicinity of the railroad switch when he was injured, that he called to anyone for help, or that any specific person saw Mr. Menard's peril. Furthermore, Plaintiffs still fail to allege what "highly dangerous rail operations" Defendant persisted in after Mr. Menard's first injury. As in the original Complaint, there is nothing in the proposed amended Complaint to suggest that Defendant was engaging in anything other than ordinary rail operations. Finally, nothing in the Complaint supports Plaintiffs' allegation that Defendant had time to stop its

18

ordinary rail operations to prevent further injury, even if the law required it to do so. The Complaint does not even allege how much time passed between Mr. Menard's first and second injuries. Thus, the proposed amended Complaint fails to state a claim for negligence.

    3. <u>Loss of Consortium</u>.

The proposed amended Complaint does allege that Mr. Menard was financially dependent upon his mother for support (<u>id.</u> ¶ 52.), as is required under Massachusetts law for a claim of loss of consortium by the parent of an adult child. Mass. Gen. Laws. ch. 231, § 85X. However, because the proposed amended Complaint fails to state any underlying claims for liability, the loss of consortium claim fails as a matter of law.

The proposed amended Complaint also fails to state claims for intentional or negligent infliction of emotional distress for the same reasons as the original Complaint.

## IV. <u>CONCLUSION</u>

There is no question that this was an appalling accident, and Plaintiff suffered heartbreaking injuries. It would, however, be false compassion to permit this case to

proceed through the distress and disruption of the litigation process when the facts as alleged simply are insufficient to support a verdict in favor of Plaintiff.

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 11) is hereby ALLOWED. Plaintiffs' Motion to Amend the Complaint (Dkt. No. 19) is hereby DENIED as futile. The clerk will enter judgment for Defendant. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor  
MICHAEL A. PONSOR  
U. S. District Judge